UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| ROBERT OLSZEWSKI, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 8-268-B-W |
| | ) |
| MAYO REGIONAL HOSPITAL, et al., | ) |
| | ) |
|     Defendants | ) |
| | ) |

**AMENDED[1] RECOMMENDED DECISION ON MOTIONS TO DISMISS**
**(Doc Nos. 4 & 8)**

According to his complaint:

> On August 6, 2007, Robert Olszewski went to Mayo Regional Hospital twice within 17 hours, complaining of chest pain, headache and fever. On the second visit, Mr. Olszewski -- who at this point was experiencing a heart attack -- was not given an appropriate medical screening to determine whether he was in an emergent condition (he was), was ignored by emergency room physician's assistant Scott Simpson (who incorrectly believed that Mr. Olszewski was simply a drug seeking individual), then attacked by Mr. Simpson as Mr. Olszewski tried to leave the hospital to seek appropriate medical care elsewhere in order to save his own life.

(Compl. at 1.)

Defendants Mayo Regional Hospital and Hospital Administrative District 4 have filed a motion seeking dismissal of Counts V, VII, VIII, IX, and X. (Doc. No. 4.) Defendant D. Scott Simpson had filed his own motion to dismiss these counts relying entirely on the arguments made by the other two defendants. (Doc. No. 8.) The argument for dismissal of these counts is that they purport to state a claim for professional negligence, they are therefore governed by the Maine Health Security Act (MHSA), and Olszewski did not comply with the notice of claim and

---

[1] This amendment corrects the date of this recommended decision from December 9, 200<u>7</u> to December 9, 200<u>8</u>.

pre-litigation screening requirements of the MHSA. The defendants seek dismissal without prejudice.[2]

*Discussion*

Count V of the complaint alleges that the three moving defendants are liable for assault; Count VII seeks damages from the three defendants for intentional infliction of emotional distress and Count VIII for the negligent infliction of emotional distress; Count IX charges the three movants with a breach of fiduciary duty; and Count X asserts that Defendants Mayo Regional Hospital and Hospital Administrative District 4 are liable for negligent supervision.

The Maine Health Security Act provides: "No action for professional negligence may be commenced until the plaintiff has: A. Served and filed written notice of claim in accordance with Section 2853; B. Complied with the provisions of subchapter IV-A; and C. Determined that the time periods provided in Section 2859 have expired." 24 M.R.S. §2903(1). The "provisions of subchapter IV-A," referred to in Section 2903(1)(B), are Sections 2851 through 2859 of the Act, which govern the formation of prelitigation screening panels, the submission of malpractice claims to those panels, the conduct of panel hearings, and the effects of the panels' findings.

The Health Security Act defines the term "action for professional negligence" as: Any action for damages for injury or death against any health care provider, its agents or employees, or health care practitioner, his agents or employees, whether based <u>upon tort or breach of</u>

---

[2] See 24 M.R.S. § 2902 ("Actions for professional negligence shall be commenced within 3 years after the cause of action accrues. For the purposes of this section, a cause of action accrues on the date of the act or omission giving rise to the injury.").

contract or otherwise, arising out of the provision or failure to provide health care services." 24 M.R.S. §2502(6) (emphasis added).

     The allegations relevant to the assault are as follows.  Shortly after he arrived at the Mayo Regional Hospital on this second admission on August 6, 2007, Mr. Olszewski requested pain medication to lessen the excruciating pain he suffered at the time. (Compl. ¶ 33.) When Mr. Olszewski requested pain medication, he specifically indicated that he had already tried ibuprofen but that it had been ineffective and that he wanted a different pain medication.  (Id. ¶ 34.)  Mr. Simpson seemed to believe that Mr. Olszewski was merely a drug seeking individual with no significant medical issues. (Id. ¶ 35.) Mr. Simpson offered Mr. Olszewski ibuprofen as a pain medication. (Id. ¶ 36.) Mr. Olszewski declined this medication, telling Mr. Simpson that he had already explained that ibuprofen was not helpful. (Id. ¶ 37.) At that point, Mr. Simpson told Mr. Olszewski that if he did not want the medication offered (ibuprofen), then there was nothing more he could do for Mr. Olszewski, and he walked out of the room. (Id. ¶ 38.) Mr. Olszewski, accompanied by his mother, Florence Olszewski, got up and began to walk out of the Hospital, intending to seek appropriate medical care from another hospital in the area. (Id. ¶ 39.) As he walked out of the emergency department of the Hospital, Mr. Olszewski criticized Mr. Simpson and the Hospital for what he felt was inadequate and poor care.  (Id. ¶ 40.) Mr. Simpson then rounded one of the counters, ran towards Mr. Olszewski and dove at his legs. (Id. ¶ 41.) Mr. Olszewski reacted by grabbing Mr. Simpson around his waist and lifting him off the ground. (Id. ¶ 42.) Mr. Olszewski's actions were taken in self-defense. (Id. ¶ 43.)  Mr. Olszewski was then beset by other hospital personnel who demanded that he let go of Mr. Simpson. (Id. ¶ 44.) Mr. Olszewski slowly set Mr. Simpson down so that he would not fall on his head.  (Id. ¶ 45.) Mr.

Olszewski then attempted to leave the Hospital again, and was briefly detained by the police. (Id. ¶ 46.)

Olszewski counters the defendants' argument for dismissal of these counts by arguing:

> When a medical provider or an employee of a medical provider perpetrates a criminal physical assault on a member of the public, regardless of whether he effects this assault with his hands, his body, a scalpel, a heart-lung machine, an MRI machine (assuming he has Herculean strength), or a thermometer, and injures the attackee, the action for damages that follows does not "arise out of the provision or failure to provide health care services." The very suggestion that it does simply does not pass the straight face test.

(Opp'n Mot. Dismiss at 3.)  "Hospitals and medical providers" he maintains, "cannot use the Maine Health Security Act to insulate/protect themselves from actions for damages arising out of unprovoked and unjustified assaults against members of the public."  (Id. at 4.)

The defendants rely in part on Thayer v. Jackson Brook Institute, Inc., a case in which the plaintiff couple were visiting their son at a psychiatric facility and the mother was attacked by another patient. The plaintiffs argued that their assault-related claim did not "arises 'out of patient care' so as to bring it within the ambit of" the MHSA. 584 A.2d 653, 654 (Me. 1991).  The Maine Law Court rejected this argument, reasoning:

> Contact with nonpatients was an essential part of JBI's program of psychiatric care. This program allowed patients to interact with nonpatients to the extent those treating them believed beneficial for the patient and safe for nonpatients. Although the Thayers have worded their complaint to allege a failure to "exercise reasonable and ordinary care to keep and maintain the premises in a reasonably safe condition," the essence of the duty allegedly breached by JBI derived from professional decisions of JBI's staff.
>     The decision to allow contact between the assailant and visitors was based, in part, on JBI's philosophy of psychiatric care and, in part, on the staff's determination of the assailant's ability safely and beneficially to interact with persons from outside the institution. JBI's alleged negligence thus cannot be

4

> divorced from the program of care this patient was receiving. If JBI had a duty to protect Mrs. Thayer while she was visiting its premises, that duty was executed by those who evaluated the patients and prescribed their relative freedom to interact with visitors. In this case the decision to allow both supervised and unsupervised contact with outsiders was made by persons who were caring for the assailant. Because this was a decision "arising out of patient care" the court did not err in finding this action barred by section 2902's statute of limitations.

Id. As Olszewski points out, this case does not definitively answer the question posed by the current motions because the assault stemmed from a treatment decision of the defendant in contrast to the allegations a non-treatment predicated assault in this complaint.

Of general help is Butler v. Killoran in which the Maine Law Court addressed the scope of MHSA as follows:

> We begin by examining the language of section 2502's definition of an "action for professional negligence" to determine whether the Legislature intended that phrase to encompass actions for wrongful death arising from professional negligence. See Labbe v. Nissen Corp., 404 A.2d 564, 567 (Me.1979) (in seeking to determine legislative intent, we must look first to the language of the statute itself). Section 2502's broad language, particularly its inclusion of the words "or death" and "or otherwise," provides strong evidence of the Legislature's intention that the HSA fully occupy the field of claims brought against health care providers and practitioners "for damages for injury or death ... arising out of the provision or failure to provide health care services." 24 M.R.S.A. § 2502(6); see Dutil v. Burns, 674 A.2d 910, 911 (Me.1996); Musk v. Nelson, 647 A.2d 1198, 1201 (Me.1994). Indeed, we have previously recognized the broad scope of section 2502's definition of an action for professional negligence, and have found the HSA's procedural requirements and limitations period to be applicable in a wide variety of contexts. See, e.g., Brand v. Seider, 1997 ME 176, 697 A.2d 846 (patient's claim against psychologist for breach of confidentiality is subject to HSA's procedural requirements); Dutil, 674 A.2d 910 (strict liability and breach of warranty claims brought against health care providers are subject to the HSA's procedural requirements and limitations period), Musk, 647 A.2d 1198 (claim for failed sterilization is subject to HSA's limitations period); Thayer v. Jackson Brook Inst., 584 A.2d 653 (Me.1991) (claim brought by plaintiff who was attacked while visiting patient care facility is subject to HSA's limitations period).

1998 ME 147, ¶ 6; 714 A.2d 129, 131 -32 (Me. 1998) (footnotes omitted). "In summary," the Law Court emphasized, "the broad language of section 2502, the legislative history surrounding

5

its enactment, and the specificity of the subject matter of the HSA persuade us that the Legislature intended section 2502 to mean exactly what it says: that an action for professional negligence is 'any action for damages for injury or death ... arising out of the provision or failure to provide health care services.'" Id. ¶ 16, 714 A.2d at 134.  This case certainly indicates that the Maine Law Court is likely to regard the reach of MHSA expansively.

Perhaps the closest MHSA case with regards to the conduct in question, is a Superior Court decision that addressed the applicability of the MHSA provision in the context of lawsuits "filed by the family members of deceased persons whose brains were allegedly removed through the actions of defendants ." Allen v. Stanley Medical Research Institute, No. CV-05-03, CV-05-14, CV-05-34, CV-05-36, CV-05-82, CV-05-83, CV-05-121, CV- 05-151, CV-05-186, CV-05-195, CV-05-252, CV-05-332, CV-05-540, 2005 WL 3845660, 1 (Me. Super. Dec. 13,  2005) The justice concluded as relevant to the present dispute:  "Because the MHSA was intended to 'fully occupy the field of claims' brought against health care practitioners and providers, the alleged conduct in this case would constitute health care services." Id. at 4 (citing Dutil, 674 A.2d at 911).  Obviously, the post-mortem removal of the brains of these patients was not related to medical care of the deceased.

Based on the plain language of 24 M.R.S. §2502(6) and the reasoning in the cases cited above, I conclude that the counts in question are subject to the notice and screening requirements of  24 M.R.S. §2903(1).

### *Conclusion*

Because in my judgment the Maine Courts would likely conclude that Olszewski's claims in Counts V, VII, VIII, IX, and X are covered by the provisions of the MHSA, I recommend that the court grant these two motions and dismiss these counts without prejudice.  Should the court

adopt this recommendation, I would intend to issue a scheduling order to govern the litigation on the remaining counts and proceed with the matter in this court. Hopefully the parties would be able to minimize any duplication of discovery efforts. If discovery and motion practice is resolved in this court prior to completion of the screening panel process, I would be inclined to defer trial of this matter until plaintiff had an opportunity to amend his complaint. Of course, defendants can always waive the panel screening process and handle the entire matter on the same schedule in this court. I want defendants to understand that part of my recommendation does <u>not</u> include staying the federal claims in this court while the panel process unfolds.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

December 9, 2008